**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GENNARO RAUSO,** | : | **CIVIL ACTION NO. 3:97-CV-1841** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLES ZIMMERMAN, et al..** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Gennaro Rauso ("Rauso") is a former inmate of the Pennsylvania State Correctional Institute at Waymart ("SCI-Waymart").  (Doc. 31 ¶ 3.)  Rauso brings multiple claims pursuant to 42 U.S.C. § 1983 against several SCI-Waymart employees, namely former Superintendent Charles Zimmerman ("Zimmerman"), Property Room Sergeant Vincent McCloskey ("McCloskey"), Security Lieutenant Peter Cwalina ("Cwalina"), and former Mailroom Supervisor Lillian Rollison ("Rollison").  (Doc. 31 ¶¶ 1, 4; Doc. 307 at 4-5.)

Presently before the court are the parties' briefs (Docs. 307, 309) regarding the dispositive issues raised in defendants' pretrial memorandum (Doc. 296).  For the reasons that follow, summary judgment will be granted in part and denied in part.

## I.   **Statement of Facts**[1]

The dispute in this case centers around Rauso's direct appeal of his criminal conviction to the Pennsylvania Superior Court.[2]  Through counsel, Rauso filed a brief in direct appeal of his conviction on July 31, 1995.  (Doc. 307 at 6.)  Three months later, Rauso dismissed his counsel and petitioned the court for leave to proceed *pro se*, which was granted.  (Doc. 307 at 1, 7.)  Rauso was also granted leave to file a supplemental brief in support of his direct appeal, which was to be considered in conjunction with the brief previously filed by counsel.  (Doc. 296 at 9-10.)

One month prior to dismissing his counsel, Rauso was transferred from SCI-Waymart to a prison in Camden County, New Jersey.  (Doc. 31 ¶ 7; Doc. 307 at 1, 6.)  Rauso contends that because of his transfer to New Jersey, he was denied access to legal materials that were necessary to the preparation of his supplemental brief.[3]

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, the non-moving party.  See infra Part II.

[2] In 1994, Rauso was sentenced to a term of five to ten years for drug possession by the Philadelphia County Court of Common Pleas.  (Doc. 307 at 4.)

[3] Rauso prepared and filed a supplemental brief; however, he contends that the legal arguments contained in the brief were inadequate because of his lack of access to legal materials.  (Doc. 242 at 2.)  Rauso also prepared and filed the following motions after his transfer to New Jersey:  (1) a motion to strike, (2) a motion for bail, (3) a motion for an enlargement of time to file a reply brief, (4) a "*pro se* petition for expeditious disposition," (5) a motion for reconsideration, (6) a motion for re-argument, (7) a motion to remand the action, and (8) a motion for the appointment of counsel.  (Doc. 307 at 7-8.)

(Doc. 31 ¶ 10; Doc. 307 at 2.)  Specifically, Rauso contends that he was denied access to: (1) notes of testimony and other documents from his criminal trial, and (2) Pennsylvania legal research materials.  (Doc. 31 ¶¶ 9, 20.)  Rauso further contends that he contacted each of the defendants at SCI-Waymart[4] and requested that they forward the necessary materials to him, but they refused to do so.  (Doc. 31 ¶¶ 10-12; Doc. 307 at 2.)

Ultimately, the Pennsylvania Superior Court denied Rauso's direct appeal. (Doc. 280 at 402-09; Doc. 307 at 8.)  Thereafter, Rauso commenced the instant action pursuant to 42 U.S.C. § 1983, claiming that defendants violated his constitutional rights by refusing to forward his legal materials from SCI-Waymart to the New Jersey facility.  Specifically, Rauso contends that defendants violated:  (1) his First and Fourteenth Amendment right of access to the courts,[5] (2) his Sixth and Fourteenth Amendment right to proceed *pro se*,[6] (3) his Eighth Amendment right to be free from cruel and unusual punishment, (4) his Fourteenth Amendment right to

---

[4] At all times relevant to this legal action, the defendants' job duties at SCI-Waymart were as follows: (1) Zimmerman supervised and managed all prison operations, (2) McClosky and Cwalina managed property that belonged to inmates who were temporarily absent from the prison, and (3) Rollison processed incoming and outgoing mail.  (Doc. 31 at ¶ 4; Doc. 307 at 4-5.)

[5] Rauso also contends that this right is protected by Article I, § 11 of the Pennsylvania Constitution.  (Doc. 303 at 9.)

[6] Rauso also contends that this right is protected by Article I, § 9 of the Pennsylvania Constitution.  (Doc. 31 ¶ 34; Doc. 307 at 3.)

due process,[7] and (5) his Fourteenth Amendment right to equal protection of the

laws.[8]  (Doc. 31 ¶¶ 28-30, 32, 36; Doc. 307 at 3; Doc. 303.)

In 2001, defendants filed a motion for summary judgment (Doc. 199), which

was fully briefed and ripe for disposition.  Thereafter, Rauso filed a Post-Conviction

Relief Act ("PCRA") petition in the Pennsylvania Superior Court, collaterally

attacking his criminal conviction.  (Doc. 242 at 4.)  The instant matter was stayed

pending disposition of Rauso's PCRA petition.[9]  At the same time, defendants'

motion for summary judgment (Doc. 199) was denied as moot without prejudice to

defendants' right to re-file the motion at the conclusion of the stay.  (Doc. 249.)

Rauso's PCRA petition was ultimately denied (see Doc. 257 at 3), and the stay was

_____

[7] Rauso also asserts his Fifth Amendment due process rights.  (Doc. 31 ¶ 1.)
The Fifth Amendment applies only to violations of constitutional rights by the
United States or a federal actor.  Brown v. Phillip Morris, Inc., 250 F.3d 789, 800 (3d
Cir. 2001).  Here, Rauso has not alleged that any of the defendants were acting
under the authority of the federal government.  Therefore, defendants are entitled
to summary judgment on this claim.

[8] In his pre-trial memorandum, Rauso also attempts to raise claims of First
Amendment retaliation and of willful misconduct in violation of 42 PA. CONS. STAT.
ANN. § 9550.  (See Doc. 303 at 9, 17.)  Rauso did not plead these claims in his
amended complaint.  (Doc. 31.)  The court will not permit Rauso to raise new claims
at such a late stage in the proceedings.  See, e.g., Laurie v. Nat'l Passenger R.R.
Corp., 105 F. App'x 387, 392-93 (3d Cir. 2004) (discussing cases that did not allow
new claims raised at the summary judgment stage).

[9] The instant matter was initially assigned to the Honorable William J.
Nealon who entered this stay order pending disposition of the PCRA petition.
Judge Nealon subsequently reassigned this matter to the Honorable James M.
Munley.  (Doc. 253.)  On August 9, 2002, Judge Munley reassigned this matter to the
undersigned as one of the undersigned's initial case assignments.  (Doc. 254.)

lifted (see Doc. 262).  However, defendants did not re-file their motion for summary

judgment.

The case proceeded to pretrial conference, wherein the defendants raised

several jurisdictional and substantive arguments.  (Doc. 303.)  Specifically,

defendants argued that:  (1) this court lacks subject matter jurisdiction pursuant to

the Rooker-Feldman doctrine,[10] (2) Rauso's state law claim is barred by sovereign

immunity, (3) Rauso's First, Sixth, Eighth, and Fourteenth Amendment rights were

not violated, and (4) Rauso's claims are barred by qualified immunity.  (Doc. 296 at

5.)  Finding that these issues were best suited for summary disposition,[11] the court

ordered the parties to submit briefs addressing these dispositive issues.  (Doc. 305.)

All briefs have been submitted, and the issues are ripe for disposition.

## II.   **Standard of Review**

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact," and for which a jury trial

would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places

the burden on the non-moving party to come forth with "affirmative evidence,

---

[10] The Rooker-Feldman doctrine is a jurisdictional consideration extracted from two U.S. Supreme Court decisions, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[11] A district court may initiate summary judgment *sua sponte*, so long as the nonmoving party is afforded notice as required by Federal Rule of Civil Procedure 56(c).  Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); Trabal v. Wells Fargo Armored Service Corp., 269 F.3d 243, 249 n.3 (3d Cir. 2001).

beyond the allegations of the pleadings," in support of its right to relief.[12]  Pappas v.

City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see

also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be

adequate, as a matter of law, to sustain a judgment in favor of the non-moving party

on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986);

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action

proceed.  Pappas, 331 F. Supp. 2d at 315.

**III.**   **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a

means to redress violations of federal law committed by state officials.  See

42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

Id.  Section 1983 is not a source of substantive rights, but merely a method for

vindicating violations of other federal laws.  Gonzaga Univ. v. Doe, 536 U.S. 273,

284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a

---

[12] Given the unique procedural posture of this case, the court will examine
the record as developed both by the briefs addressing dispositive issues (Docs. 307,
309) and by the defendants' previous motion (Doc. 199) for summary judgment,
which was denied as moot without prejudice (see Docs. 220, 221, 222, 228, 229, 230.)

claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."[13] Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Satisfaction of these elements, however, does not guarantee recovery. Certain officials, including state actors who perform "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Wilson v. Layne, 526 U.S. 603, 609 (1999). This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). In Saucier, the Supreme Court explained the analytical process for determining when to apply the privilege of qualified immunity:

> A court required to rule upon the qualified immunity issue must consider, then this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?  This must be the initial inquiry . . . .  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

---

[13] Defendants apparently do not dispute that, during the alleged incidents, they were "acting under color of state law."

Saucier, 533 U.S. at 201.  Thus, the qualified immunity analysis requires a two-step

inquiry.

> First, the court must determine whether the facts alleged show that the
> defendant's conduct violated a constitutional or statutory right.  If so, the
> court must then determine whether the constitutional or statutory right
> allegedly violated by the defendant was "clearly established."  If the court
> concludes that the defendant's conduct did violate a clearly established
> constitutional or statutory right, then it must deny the defendant the
> protection afforded by qualified immunity.

Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006); cf. Wright v. City of Phila., 409

F.3d 595 (3d Cir. 2005) (discussing whether the constitutional violation is a separate

inquiry or part of the qualified immunity analysis); Kaucher v. County of Bucks, 455

F.3d 418, 423 n.2 (3d Cir. 2006).

When immunity is raised at the summary judgment stage, the court's analysis

of the merits of the claims for purposes of summary judgment essentially merges

with its analysis of the existence of a deprivation of federal rights for purposes of

immunity.  See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v.

Salisbury Township, 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000); see also Grant v.

City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of

[the] assertion of qualified immunity is a careful examination of the record . . . to

establish . . . a detailed factual description of the actions of each individual

defendant (viewed in a light most favorable to the plaintiff).").  Proceeding under

this framework, the court will examine each of Rauso's claims to determine, first, in

a light most favorable to Rauso, whether he has alleged sufficient evidence of a

8

deprivation of a constitutional right and, second, whether the right at issue was clearly established.

### A.   <u>Right of Access to Courts</u>

The First Amendment offers protection for a wide variety of expressive activities, including speech, exercise of religion, and access to the courts.[14]  <u>See</u> U.S. CONST. amend I.  These rights are lessened—but not extinguished—in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). With this caveat in mind, the court will analyze the claim raised by Rauso.

To prove a violation of the right of access to the courts, a prisoner must not only establish that he was denied access to the courts but also that he "suffered actual injury as a result."  <u>Bacon v. Taylor</u>, 414 F. Supp. 2d 475, 481 (D. Del. 2006). Rauso asserts that he waived several legal arguments because of his inability to raise them during his direct appeal.  For wavier of a claim to constitute an actual injury, the waived claim must be nonfrivolous.  <u>Lewis</u>, 518 U.S. at 349-55; <u>see also</u> <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).  Here, Rauso has failed to provide any evidence that the alleged waived claims were nonfrivolous.  The

---

[14] The right to access the courts also implicates the protections of the Fourteenth Amendment.  <u>See</u> <u>Bieregu v. Reno</u>, 59 F.3d 1445, 1452-54 (3d Cir. 1995). But, because the basis of the right does not alter the constitutional analysis, <u>see</u> <u>id.</u>, the court will discuss these issues in the First Amendment context.

majority of Rauso's alleged waived claims involve ineffective assistance of counsel.[15] (See Doc. 230, Ex. D at 42-50.)  Rauso also alleges that the following claims were waived:  (1) that he never knowingly and intelligently waived his right to counsel, (2) that the result of his suppression hearing should be reversed, and (3) that the sentence he received was erroneous.  (See Doc. 230, Ex. D at 44-46, 48-50.)  The court finds nothing to suggest that the outcome of Rauso's direct appeal would have been different had any of these alleged waived claims been asserted.  In fact, the Pennsylvania Superior Court has previously addressed each of these claims and found them to be meritless.[16]  Therefore, Rauso has failed to establish an actual injury.

Even assuming *arguendo* that Rauso was able to establish the he suffered an actual injury, he would also need to show that he did not have "meaningful" access to the courts in order to establish a constitutional violation.  Prison officials must provide inmates with the resources necessary to present valid claims to the

---

[15] In his brief in opposition to defendants' motion for summary judgment (Doc. 199), Rauso indicates that all "meritorious claims [he] could have presented on direct appeal" are discussed in a brief which he previously filed with the Pennsylvania Superior Court.  (See Doc. 230, Ex. D.)  In that brief, Rauso alleges that his trial counsel was ineffective because counsel:  (1) failed to ensure that the notes of testimony from a pre-trial suppression hearing were filed with the Pennsylvania Superior Court, (2) failed to "adequately present or preserve the issues surrounding the discretionary aspects" of Rauso's sentence, (3) failed to "properly present or preserve appellant's right to receive a lessor [sic] offense instruction," and (4) failed to inform him of his right to file post-verdict motions.  (See Doc. 230, Ex. D at 45, 47-48.)

[16] See Commonwealth v. Rauso, Nos. 24 EDA 2001 & 1397 EDA 2001, slip op. at *7-12 (Pa. Super. Ct. May 24, 2002).

judiciary.  <u>Lewis v. Casey</u>, 518 U.S. 343, 349-55 (1996).  These resources most often take the form of a law library or legal assistance, but the Constitution permits prison officials to employ other alternatives that ensure inmates "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  <u>Bounds v. Smith</u>, 430 U.S. 817, 825 (1977), <u>quoted in</u> <u>Lewis</u>, 518 U.S. at 351 (stating that prisoners do not enjoy an "abstract, freestanding right to a law library or legal assistance").  One such alternative could be providing the inmate with court-appointed counsel.  <u>Bounds</u>, 430 U.S. at 828 (holding that providing an inmate with "adequate assistance from persons trained in the law" would satisfy the requirement of access to courts); <u>accord</u> <u>Unites States <i>ex rel</i> George v. Lane</u>, 718 F.2d 226, 227 (7th Cir. 1983) (holding that when a prisoner refuses appointed counsel, he cannot assert a constitutional right of denial of "access to a law library"); <u>United States v. Chatman</u>, 584 F.2d 1358, 1360 (4th Cir. 1978) (stating that prisoners do not have the option to choose "the form which [legal] assistance will take").

Even viewing the evidence in the light most favorable to Rauso, the court finds no indication that Rauso was denied "meaningful" access to courts.  Rauso had court-appointed counsel for purposes of his direct appeal, but he made the knowing and voluntary decision to dismiss this counsel.  (<u>See</u> Doc. 307 at 1, 6-7.) Certainly, Rauso's counsel would have had access to the legal materials and court documents to which Rauso claims he was denied access.  Rauso chose to dismiss his counsel; he must "abide by the consequences of this choice."  <u>Faretta v. California</u>,

422 U.S. 806, 835 (1975).  Furthermore, Rauso was able to file at least seven motions and one brief while he was housed at the New Jersey prison facility.[17]  Rauso's ability to conduct this volume of legal activity is a further indication that he retained "meaningful" access to the courts.  For the foregoing reasons, this claim cannot proceed, and the court will grant summary judgment in favor of defendants.

### B.   Right to Proceed *Pro Se*

The Sixth Amendment guarantees the availability and adequacy of counsel to assist individuals charged with a felony offense in presenting their defense.[18] Gideon v. Wainwright, 372 U.S. 335, 344 (1963).  Similarly, the Sixth Amendment also provides a criminal defendant the right to represent himself.  Faretta, 422 U.S. at 835.  However, the right to represent oneself is violated only when an individual is forced "to accept against his will a state-appointed" attorney.  Id. at 836.

Clearly, Rauso's Sixth Amendment rights were not violated.  Rauso was provided the opportunity to proceed *pro se* in his direct appeal; he was not forced to accept unwanted counsel.  (See Doc. 296 at 9-10.)  When Rauso made the independent decision to dismiss his counsel, he chose to forgo "many of the traditional benefits associated with the right to counsel."  Faretta, 422 U.S. at 835.

---

[17] See supra note 3.

[18] Rauso asserts that his right to proceed *pro se* also implicates the protections of the Fourteenth Amendment.  (Doc. 303 ¶ 8.)  As discussed earlier, the basis of the right does not alter the constitutional analysis.  Bieregu, 59 F.3d at 1452-54. Therefore, the court will discuss these issues in the Sixth Amendment context.

12

Rauso will not be permitted to achieve an end-run around this decision by asserting the right to counsel at this stage. Accordingly, this claim cannot proceed.

### C.   **Cruel and Unusual Punishment**

The Eighth Amendment guarantees that individuals will not be subjected to "cruel and unusual punishments." U.S. CONST. amend. VIII. In the prison setting, this provision prohibits officials from acting with "deliberate indifference" towards a "substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828, 832-34 (1994). Such a violation of the Eighth Amendment can be established only by proof that a prison official knew of and chose to disregard an "excessive risk to inmate health or safety." Id. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Clearly, Rauso has not alleged any risk to his health or safety. Rauso complains only about the fact of his incarceration, not about the conditions of his imprisonment. (See Doc. 31 ¶¶ 35-36.) Therefore, his Eighth Amendment claim cannot proceed. See Farmer, 511 U.S. at 832-34.

### D.   **Equal Protection**

Violations of the Equal Protection Clause of the Fourteenth Amendment may be established by proof that officials "intentionally treated [some persons] differently from others similarly situated" and "that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); accord Snowden v. Hughes, 321 U.S. 1, 8 (1944). The size of the group

targeted for discrimination is "immaterial for equal protection analysis." <u>Olech</u>, 528

U.S. at 564.  Thus, a single individual subjected to unequal enforcement of the laws

may maintain a § 1983 claim as a "class of one."  <u>Id.</u> at 564.  <u>See generally</u> Hortensia

S. Carreira, <u>Protecting the "Class of One,"</u> 36 REAL PROP. PROB. & TR. J. 331 (2001).

Here, Rauso asserts that he was "singled out as a litigious prisoner who had

filed grievances against prison officials."  (Doc. 311 at 12.)  Rauso also asserts that,

in response to his request for documents, Zimmerman stated, "I see you filed a lot

of grievances here.  I don't know who you think you are, but now you want us to do

something for you.  I'm not send [sic] you anything."  (Doc. 228 at 6.)  Viewing this

evidence in the light most favorable to Rauso, summary judgment cannot be

granted at this time.[19]

### E.   **Due Process**

The Due Process Clause offers procedural and substantive protections

against deprivations of "life, liberty, or property."  U.S. CONST. amend. XIV, § 1; <u>see</u>

<u>Pappas</u>, 331 F. Supp. 2d at 316.  The threshold issue of due process analysis is

whether the person has been deprived of one of these protected interests.  <u>Id.</u>  Here,

Rauso alleges that he was deprived of his property, namely his notes of testimony,

without due process of law.  (Doc. 31 at 5; Doc. 303 at 8-9.)

---

[19] Defendants' motion for summary judgment (Doc. 199) addressed only
Rauso's right of access to the courts claim.  (<u>See</u> Doc. 221 at 7.)  Therefore, the
factual record developed for the motion (Doc. 199) does not involve this claim.
Likewise, the parties' briefs addressing dispositive issues (Docs. 307, 309) did not
supplement the evidence of record.  Accordingly, Rauso has not been afforded the
opportunity to develop fully the factual record for his equal protection claim.

### 1.   <u>Procedural Due Process</u>

An inmate's procedural due process rights are not violated by an "unauthorized intentional deprivation of property . . . if a meaningful postdeprivation remedy is available for the loss."  <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984).  The Third Circuit has held that the Pennsylvania Department of Corrections grievance procedure constitutes "an adequate post-deprivation remedy."  <u>Durham v. Dep't of Corrections</u>, 173 F. App'x 154, 157 (3d Cir. 2006); <u>see also</u> <u>Tillman v. Lebanon County Corr. Facility</u>, 221 F.3d 410, 422 (3d Cir. 2000).  In his amended complaint, Rauso admits that he utilized the Department of Corrections grievance procedure.  (Doc. 31 ¶ 26.)  Therefore, Rauso's right to procedural due process has not been violated, and this claim cannot continue.

### 2.   <u>Substantive Due Process</u>

The substantive protections of the Due Process Clause apply in an extremely narrow range of circumstances, when the conduct at issue is so irrational as to "shock the conscience."  <u>United Artists Theatre Circuit, Inc. v. Township of Warrington</u>, 316 F.3d 392, 402 (3d Cir. 2003) (citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 844-45 (1998)).  Substantive due process does not target government actions that are merely taken for an "improper purpose" or in "bad faith."  <u>See</u> <u>id.</u> at 400-02; <u>Corneal v. Jackson Township</u>, 313 F. Supp. 2d 457, 465-66 (M.D. Pa. 2003), <u>aff'd</u>, 94 Fed. Appx. 76 (3d Cir. 2004).  Rather, it constrains only those activities that have *no reasonable relation* to legitimate government objectives.  <u>Id.</u>  So long as a

valid purpose plausibly underlies the decision, a substantive due process claim will not lie.  Id.

In the case *sub judice*, defendants have failed to suggest what legitimate government objective was served by withholding Rauso's property.  (Doc. 307 at 24-25.)  Given that the burden to establish qualified immunity rests with defendants, Hess v. Smyers, No. 1:CV-03-2396, 2006 WL 3324915, *4 (M.D. Pa. 2006), summary judgment on this claim cannot be granted.[20]

### F.    State Claims

Rauso raises several pendent state claims arising under the Pennsylvania Constitution.[21]  Defendants contend that these claims are barred by the doctrine of sovereign immunity.  In Pennsylvania, Commonwealth employees are "immune from suit for those actions taken within the scope of their duties, except in those instances in which that immunity has been specifically waived."[22]  Collins v. Bopson, 816 F. Supp. 335, 342 (E.D. Pa. 1993) (discussing 1 PA. CONS. STAT. ANN. § 2310).  The Pennsylvania General Assembly has waived sovereign immunity for negligent acts involving the following nine areas:

> 1) the operation of a motor vehicle in the control or possession of a Commonwealth party; 2) health care employees; 3) care, custody or control of

---

[20] The court notes that the factual record for this claim has not been fully developed.  See supra note 19.

[21] See supra notes 5-6 (discussing Rauso's state law claims).

[22] Sovereign immunity extends to alleged violations of the Pennsylvania constitution.  Faust v. Commonwealth, 592 A.2d 835, 839 (Pa. Commw. Ct. 1991).

personal property; 4) Commonwealth-owned property; 5) potholes or other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines.

 Shoop v. Dauphin County, 766 F. Supp. 1327, 1334 (M.D. Pa. 1991) (discussing 42 PA. CONS. STAT. ANN. § 8522).

In the case *sub judice*, the court finds that defendants were acting within the scope of their duties as corrections officers when they decided how to manage and process Rauso's requests for his property.  See Durham, 173 F. App'x at 156-57 (holding that corrections officers were immune from suit for removing religious paintings from inmate's cell); Collins, 816 F. Supp. at 342 (holding that corrections officers were immune from suit involving alleged beating of inmate).  Furthermore, none of the nine enumerated exceptions to sovereign immunity apply.  See 42 PA. CONS. STAT. ANN. § 8522.  Therefore, Rauso's state law claims cannot proceed.[23]

## IV.   **Conclusion**

For the foregoing reasons, the court will grant summary judgment in favor of defendants on the following claims:  (1) the First and Fourteenth Amendment right of access to the courts, (2) the Sixth and Fourteenth Amendment right to proceed *pro se*, (3) the Eighth Amendment right to be free from cruel and unusual punishment, (4) the Fourteenth Amendment right to procedural due process, and

---

[23] Even assuming *arguendo* that sovereign immunity did not bar Rauso's state law claims, Rauso could not assert a separate claim for monetary damages under the Pennsylvania Constitution.  Jones v. City of Phila., 890 A.2d 1188, 1208-09 (Pa. Commw. Ct. 2006) (holding that there is no separate cause of action for money damages under the Pennsylvania Constitution).

(5) all pendent state law claims.  This matter will proceed to trial on Rauso's

Fourteenth Amendment equal protection and substantive due process claims.[24]

An appropriate order will issue.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      December 14, 2006

---

[24] Given the emphasis of the parties' legal memoranda on the Rooker-Feldman doctrine, a brief discussion of its inapplicability is warranted.  Defendants contend that the Rooker-Feldman doctrine prevents this court from exercising subject matter jurisdiction over Rauso's claims.  The Rooker-Feldman doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  Rauso's case does not fit this paradigm.  Although Rauso's Post-Conviction Relief Act ("PCRA") petitions were rejected in state court, Rauso does not complain of injuries caused by his state-court judgment.  Rather, Rauso's injuries rest upon alleged violations of his constitutional rights which occurred prior to his state-court proceedings.  See Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006) (refusing to apply Rooker-Feldman where plaintiff complained only of injuries sustained prior to the state-court proceeding).  Moreover, this case was commenced well before the decision of either of Rauso's PCRA petitions and therefore does not invite review or rejection of the state-court determination.  Taliaferro v. Darby Township Zoning Board, 458 F.3d 181, (3d Cir. 2006) (stating that plaintiff's action was commenced "well before any state court judgment was reached, so the district court could not have been invited to review and reject such a judgment").

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GENNARO RAUSO,** | : | **CIVIL ACTION NO. 3:97-CV-1841** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLES ZIMMERMAN, et al..** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 14th day of December, 2006, upon consideration of the

parties' briefs discussing dispositive issues (Docs. 307, 309), and for the reasons set

forth in the accompanying memorandum, it is hereby ORDERED that:

1. Summary judgment is GRANTED in favor of defendants on the
following claims: (1) the First and Fourteenth Amendment right of
access to the courts, (2) the Sixth and Fourteenth Amendment right to
proceed *pro se*, (3) the Eighth Amendment right to be free from cruel
and unusual punishment, (4) the Fourteenth Amendment right to
procedural due process, and (5) all pendent state law claims.  See FED.
R. CIV. P. 56.

2. Summary judgment is DENIED on plaintiff's Fourteenth Amendment
equal protection and substantive due process claims.  See FED. R. CIV.
P. 56.

3. The Clerk of Court is directed to defer the entry of judgment until the
conclusion of this case.

4. A revised pretrial and trial schedule shall issue by future order of
court.

   S/ Christopher C. Conner    
CHRISTOPHER C. CONNER
United States District Judge